# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Delores Williams, Personal Representative of the Estate of Edward Murry, Deceased, and Matthew Whitaker, Jr., as Personal Representative of the Estate of Annie Mae Murry, Deceased, Appellants,

v.

Government Employees Insurance Company (GEICO), Respondent.

Appellate Case No. 2011-196449

———————————

Appeal From Richland County
George C. James, Jr., Circuit Court Judge

———————————

Opinion No. 27435
Heard March 21, 2013 – Filed August 20, 2014

———————————

**AFFIRMED IN PART, REVERSED IN PART**

———————————

Terry E. Richardson, Jr. and Christopher James Moore, both of Richardson, Patrick, Westbrook & Brickman, LLC, of Barnwell; and Robert A. McKenzie, of McDonald, McKenzie, Rubin, Miller and Lybrand, LLP, of Columbia, for Appellants.

William H. Bowman, III and Robert P. Wood, both of Rogers Townsend & Thomas, PC, of Columbia, for Respondent.

———————————

**JUSTICE BEATTY:**  Delores Williams, the personal representative of the Estate of Edward Murry, and Matthew Whitaker, Jr., the personal representative of the Estate of Annie Mae Murry (PRs), brought this declaratory judgment action to determine whether a GEICO motor vehicle insurance policy issued to the Murrys provided $15,000 or $100,000 in liability proceeds for bodily injury for an accident in which both of the Murrys were killed.  The circuit court concluded coverage was limited to the statutory minimum of $15,000 based on a family step-down provision in the policy that reduced coverage for bodily injury to family members from the stated policy coverage of $100,000 to the statutory minimum amount mandated by South Carolina law during the policy period.  The PRs appeal, contending the step-down provision is ambiguous and/or violative of public policy. We affirm in part and reverse in part.

## I.  FACTS

The facts in this case were either stipulated to by the parties or are not in dispute.  The Murrys, who were husband and wife, purchased a motor vehicle insurance policy from GEICO, policy number 0685-44-55-04, effective September 2, 2006 until March 2, 2007.  The Murrys were the only named insureds on the policy.  The Murrys carried liability coverage in excess of the statutory minimum limits.  As indicated on the "Family Automobile Renewal Policy Declarations" page for the policy (Declarations), they purchased liability insurance with limits of $100,000 per person and $300,000 per accident for bodily injury, and $50,000 per accident for property damage.

On September 3, 2006, the Murrys were the sole occupants of their vehicle when it was struck by a train.  Both of the Murrys died from injuries caused by the collision.  It is unknown who was the driver and who was the passenger at the time of the accident.  However, since both of the Murrys were insureds under the policy, the accident resulted in bodily injury to an insured, regardless of who was driving.

A dispute arose as to the amount of liability proceeds due under the policy. The PRs believed the proper amount of coverage was the stated policy amount of $100,000.  GEICO took the position that only $15,000 was owed under the Exclusions portion of the policy as a result of the following provision contained under Section I, entitled "Liability Coverage":

EXCLUSIONS
When Section I Does Not Apply

       We will not defend any suit for damage if one or more of the exclusions listed below applies.  We do not provide liability coverage, under Exclusions 1, 2, 3 and 8, in excess of the minimum limits of liability required by South Carolina law.  We do not provide any liability coverage for the remaining Exclusions.

       1.  ***Bodily injury*** to any ***insured*** or any ***relative*** of an ***insured*** residing in his household is not covered.[1]

The above language is often referred to as a family "step-down provision" as it operates to "step down," or reduce, coverage for injured family members from the original policy limit, which was $100,000 here, to the statutory minimum limit required by law during the policy period, which was $15,000.[2]

       The PRs filed this complaint against GEICO seeking a declaratory judgment as to the amount of liability proceeds due under the policy for the accident.  After a bench trial, the circuit court entered judgment for GEICO.  The court concluded

---

[1]  With respect to an "***owned vehicle***," the policy provides Section I applies to the following "***insureds***":  (1) "***you*** and ***your relatives***"; (2) "any other person driving the auto with ***your*** permission and within the actual scope of your permission"; and (3) "any other person or organization for his or its liability because of acts or omissions of an ***insured*** under 1. or 2. above."

[2]  Although GEICO has called the policy provision a "family member exclusion," we believe the provision here is more accurately termed a "step-down provision" as it does not eliminate all coverage, contrary to its captioning.  A step-down provision is one in which "the coverage 'steps down' from the actual policy limits to the minimum required by statute." *Liberty Mut. Ins. Co. v. Shores*, 147 P.3d 456, 458 n.4 (Utah Ct. App. 2006) (quoting 1 Rowland H. Long, *The Law of Liability Insurance* § 2.05[5] (2003)).  However, it should be noted that in previous litigation in other jurisdictions GEICO has successfully argued that similar provisions totally excluded family members.

"the Family Member Exclusion in the Policy applies to limit liability coverage to $15,000.00 for damages arising out of the accident of September 3, 2006."[3]

The court rejected the PRs' assertion that the GEICO insurance policy was ambiguous, stating even though the Declarations page listed liability coverage for bodily injury of $100,000/$300,000, the policy terms had to be read as a whole and the family step-down provision was capable of only one reasonable interpretation. The circuit court also found the family step-down provision did not violate this state's public policy or the statutes governing automobile insurance, particularly S.C. Code Ann. § 38-77-142. The PRs appealed, and this Court certified the case from the Court of Appeals for its review pursuant to Rule 204(b), SCACR.

## II. STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 610, 730 S.E.2d 862, 864 (2012) (citation omitted).

"In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46-47, 717 S.E.2d 589, 592 (2011) (citation omitted); *accord Townes Assocs. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard." *Kennedy*, 398 S.C. at 610, 730 S.E.2d at 864. "When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." *WDW Props. v. City of Sumter*, 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000).

---

[3] The circuit court noted that S.C. Code Ann. § 38-77-140 provided for liability coverage with a minimum limit of $15,000 at the time the policy was issued. Section 38-77-140 was later amended in 2006 for policies issued or renewed on or after January 1, 2007 to increase the minimum to $25,000. The limits are currently $25,000 per person and $50,000 per accident for bodily injury, and $25,000 for property damage. S.C. Code Ann. § 38-77-140 (Supp. 2013).

# III. LAW/ANALYSIS

On appeal, the PRs contend the circuit court erred in failing to find (1) the insurance contract was misleading and ambiguous, and (2) the family step-down provision violates South Carolina's public policy.

## A. Ambiguity

The PRs first argue the insurance contract is contradictory and misleading and that the circuit court erred in failing to find the policy was ambiguous.

An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts. *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 663 S.E.2d 484 (2008); *Coakley v. Horace Mann Ins. Co.*, 376 S.C. 2, 656 S.E.2d 17 (2007); *Estate of Revis v. Revis*, 326 S.C. 470, 484 S.E.2d 112 (Ct. App. 1997); *see generally* S.C. Code Ann. § 38-61-10 (2002) ("All contracts of insurance on property, lives, or interests in this State are considered to be made in the State . . . and are subject to the laws of this State.").

"Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977).

"It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001). The *construction* of a clear and unambiguous contract is a question of law for the court to determine. *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997). If the court decides the language is ambiguous, however, evidence may be admitted to show the intent of the parties, and the determination of the parties' intent becomes a question of fact for the fact-finder.[4] *Id.* at 592, 493 S.E.2d at 878-79.

"Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State*

---

[4] The circuit court conducted a bench trial here and, thus, was the fact-finder.

*Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins*, 328 S.C. at 592, 493 S.E.2d at 878 (quoting 17A Am. Jur. 2d *Contracts* § 338, at 345 (1991)).

"A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill*, 381 S.C. at 185, 672 S.E.2d at 574. Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions of the contract. *Farr v. Duke Power Co.*, 265 S.C. 356, 218 S.E.2d 431 (1975); *Silver v. Aabstract Pools & Spas, Inc.*, 376 S.C. 585, 658 S.E.2d 539 (Ct. App. 2008).

The PRs contend the circuit court wrongly found they were reading the Declarations in isolation when they had actually pointed to a variety of contradictions in the Declarations and the body of the policy document to show the contract "was far from clear." The PRs argue the policy starts out by listing the Murrys as the named insureds with $100,000/$300,000 of liability coverage for bodily injury, but it is not indicated anywhere in the Declarations that the coverage does not include either of the named insureds or their household relatives and that only the statutory minimums in South Carolina apply to them. Further, there is nothing in the Declarations or the rest of the policy stating what the statutory minimum limits *are* in South Carolina.

The PRs additionally point out that the general language in the policy states GEICO will pay damages which an insured becomes legally obligated to pay because of bodily injury sustained by a person, but the policy does not define "person" or explicitly limit that term to everyone who is *not* an insured or a resident relative. The PRs argue, "After repeated indications that the named insureds are covered up to the liability amounts provided in the declarations page for bodily injury, GEICO slips in the family step-down, which is unclear in and of itself." The PRs contend, "It fails to alert the purchaser what the statutory minimums are, and fails to alert them that this provision means you and your household relatives are NOT protected in these amounts shown. This creates an irreparable ambiguity upon which GEICO cannot deny coverage in the full liability limits."

In contrast, GEICO argues the PRs do not consider the entire integrated agreement, but instead read the Declarations and certain provisions in the policy in

isolation to create an ambiguity. GEICO asserts, "Insurance contracts contain many limitations and exclusions and it would be unrealistic and unreasonable to expect an insurer to identify every such limitation and exclusion and note it on the declarations page. Hence, the rule that the entire integrated agreement must be considered."

GEICO contends "person" need not be defined in the policy as it is understood to refer generically to "any human being."[5] Moreover, any of the provisions for coverage in the policy must be read in conjunction with the exclusions explicitly contained therein.

Section V, paragraph 12 of the policy, entitled "Declarations," states in relevant part: "By accepting this policy, *you* agree that . . . this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance." Thus, by its terms, the policy, along with the application and the Declarations, constitute the entire agreement between the Murrys and GEICO. *Compare Prince v. State Mut. Life Ins. Co.*, 77 S.C. 187, 191, 57 S.E. 766, 767 (1907) ("For the general purposes of construction, an application will be considered a part of the contract, if it is referred to in the policy in such a way as to indicate a clear intent to make it a part thereof." (citation omitted)) *with Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 299 (Iowa 1994) ("When construing insurance policies we consider the effect of the policy as a whole, in light of all declarations, riders, or endorsements attached.").

Section I of the policy states GEICO will pay damages that an insured becomes legally obligated to pay because of bodily injury sustained by a person and damages to or destruction of property. Although the Declarations page indicates the named insureds have liability limits of $100,000 per person and $300,000 per accident for bodily injury, Section I of the policy contains a list of twelve enumerated items under the heading "EXCLUSIONS," among them, the family step-down provision and three others (1, 2, 3, and 8) for which the statutory minimum limits apply. Consequently, these specified items are not actually full exclusions, but rather, are limitations on, or reductions in, coverage.

GEICO concedes, "While perhaps Exclusions 1, 2, 3, and 8 might more properly have been labeled 'limitations' under a separate heading, there is only one fair and reasonable way to interpret this language. Liability coverage will be

---

[5] "Person" is statutorily defined in this context as "[e]very natural person, firm, copartnership, association or corporation[.]" S.C. Code Ann. § 56-9-20(10) (2006).

provided for Exclusions 1, 2, 3, and 8 but only up to the minimum limits of liability required by South Carolina law while no liability coverage will be provided for the other Exclusions. Simply because an insurance contract is not written in the most desirable manner, if it is unmistakable in its meaning, when carefully read, it is valid and enforceable." GEICO maintains, "When all of the provisions of the [p]olicy are read together, it unambiguously provides that liability coverage for bodily injury to an insured or resident relative is limited to the minimum limits of liability required by South Carolina law."

Read as a whole, we agree with the circuit court that the language in the contract is unambiguous. Although it was not artfully worded, as GEICO acknowledges, it is, nevertheless, apparent upon examination that there is an unambiguous limitation in this regard because it may only be understood one way. The PRs correctly note that the exclusion for named insureds and resident relatives actually states there is "no coverage"; however, when all of the pertinent provisions are read together, including the sentences immediately before it that "[w]e do not provide liability coverage, Under Exclusions 1, 2, 3 and 8, in excess of the minimum limits of liability required by South Carolina law" and "[w]e do not provide any liability coverage for the remaining Exclusions," then it is unmistakable what the intent for coverage is here.

Moreover, we disagree with the PRs' assertion that the failure to specifically state *what* the statutory minimum limits of coverage were renders the GEICO policy ambiguous. An ambiguity exists only when the language is reasonably capable of being understood in more than one way. *Hawkins*, 328 S.C. at 592, 493 S.E.2d at 878. The fact that the parties would need to look up the statutory minimum limits for coverage does not render the policy ambiguous. *See Universal Underwriters Ins. Co. v. Hill*, 955 P.2d 1333, 1336-37 (Kan. Ct. App. 1998) (holding step-down provision and language in addendum limiting liability to "limits required by Kansas law" might be "stylistically inelegant," but it was not ambiguous as a reasonable person would not be misled as to the policy limits). Consequently, we hold the circuit court did not err in failing to find the GEICO policy contained an ambiguity that invalidated the step-down provision.

## B. Public Policy

The PRs next assert the circuit court erred in failing to find the step-down provision is invalid because it contravenes this state's public policy.

As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public

policy or some statutory inhibition.  *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535-36, 514 S.E.2d 327, 330 (1999); *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 523, 377 S.E.2d 569, 570 (1989); *Cobb v. Benjamin*, 325 S.C. 573, 580-81, 482 S.E.2d 589, 593 (Ct. App. 1997).

While parties are generally permitted to contract as they see fit, freedom of contract is not absolute and coverage that is required by law may not be omitted. *Jordan v. Aetna Cas. & Sur. Co.*, 264 S.C. 294, 297, 214 S.E.2d 818, 820 (1975). Statutes governing an insurance contract are part of the contract as a matter of law, and to the extent a policy provision conflicts with an applicable statute, the provision is invalid.  *Allstate Ins. Co. v. Thatcher*, 283 S.C. 585, 587, 325 S.E.2d 59, 61 (1985); *Jordan*, 264 S.C. at 297, 214 S.E.2d at 820; *Boyd v. State Farm Mut. Auto. Ins. Co.*, 260 S.C. 316, 319, 195 S.E.2d 706, 707 (1973).

The purpose of the Motor Vehicle Financial Responsibility Act (MVFRA), contained in Title 56 of the South Carolina Code, is to give greater protection to those injured through the negligent operation of automobiles.  *Pa. Nat'l Mut. Cas. Ins. Co. v. Parker*, 282 S.C. 546, 551, 320 S.E.2d 458, 461 (Ct. App. 1984).  This legislation requires insurance for the benefit of the public, and an insurer may not nullify its purposes by engrafting exceptions from liability as to uses that the evident purpose of the legislation was to cover.  *Id.*; *Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.*, 406 S.C. 534, 539-40, 753 S.E.2d 437, 440 (Ct. App. 2013).  Similarly, the stated purpose of the chapter on automobile insurance in Title 38 was to implement a complete reform of automobile insurance in order to, among other things, make sure every risk meeting certain criteria was entitled to automobile insurance and prevent the evasion of coverage provided for by that chapter.  S.C. Code Ann. § 38-77-10 (2002).

Whether a particular provision in an insurance policy violates the public policy of the state is a question of law that is reviewed *de novo* by an appellate court.  *County Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 42 (Ill. 2012). Public policy considerations include not only what is expressed in state law, such as the constitution and statutes, and decisions of the courts, but also a determination whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest or manifestly injurious to the public welfare.  *Id.* at 42-43.

The PRs contend the public policy of this state, as evidenced in section 38-77-142, prevents an insurer from reducing coverage from the amount stated in the policy, which here was $100,000, to the statutory minimum limit required by

section 38-77-140(A), which was $15,000 per person for bodily injury during the policy period at issue.  We agree.

Section 38-77-142 provides in relevant part as follows:

**SECTION 38-77-142.**  Policies or contracts of bodily injury or property damage liability insurance covering liability; required provisions.

(A) No policy or contract of bodily injury or property damage liability insurance covering liability arising from the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of a vehicle . . . **unless the policy contains a provision insuring the named insured and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured against liability** for death or injury sustained or loss or damage incurred **within the coverage of the policy or contract** as a result of negligence in the operation or use of the vehicle by the named insured or by any such person. . . .

(B) No policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of a vehicle . . . **without an endorsement or provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured**, against liability for death or injury sustained, or loss or damage incurred **within the coverage of the policy or contract** as a result of negligence in the operation or use of the motor vehicle by the named insured or by any other person.  If an insurer has actual notice of a motion for judgment or complaint having been served on an insured, the mere failure of the insured to turn the motion or complaint over to the insurer may not be a defense to the insurer, nor void the endorsement or provision, nor in any way relieve the insurer of its obligations to the insured, provided the insured otherwise cooperates and in no way prejudices the insurer.

. . . .

(C)  Any endorsement, **provision**, or rider attached to or **included in any policy of insurance which purports or seeks to**

**limit or reduce the coverage[6] afforded by the provisions required by this section is void**.

S.C. Code Ann. § 38-77-142 (2002) (emphasis added).

The PRs rely particularly upon subsection (C) and argue "[t]he statute mandates that all South Carolina insurance policies must insure the named insureds against liability for death or injury and, more importantly, the insurance policy may not limit or reduce that coverage or it will be void [as] against public policy." The PRs contend, "Here, GEICO is attempting to reduce the coverage its policy states is provided for the named insureds through the step-down provision which plainly contravenes this statue because it reduces the amount of coverage stated in the declarations page under Section I." The PRs note section 38-77-142 does not reference in any way the minimum coverage statutorily provided by section 38-77-140, but instead specifically states that an insurance contract may not reduce the coverage afforded in the policy against liability for death or injury, and the amount contracted for under the policy at issue is $100,000, not the $15,000 statutory minimum.

The circuit court correctly concluded that section 38-77-142 "requires every policy issued to insure the named insured and permissive users against liability for death or injury sustained or loss or damage incurred 'within' the coverage of the policy." However, the court erred when it found "that 'within the coverage of the policy' does not mandate coverage up to the maximum amount of liability coverage under a policy when there is a family member claimant." The court failed to give any consideration to subsection (C).

The circuit court found section 38-77-142 provides liability coverage may be reduced, so long as it is not reduced below the statutory minimum mandated by section 38-77-140. Therefore, it does not contravene public policy, citing *Hansen ex rel. Hansen v. United Services Automobile Association*, 350 S.C. 62, 565 S.E.2d

---

[6] The concurrence/dissent interprets the word "coverage" as referring to the individuals protected by the policy. However, such an interpretation conflicts with the way the word "coverage" is used in subsections (A) and (B). It is striking that the word "coverage" is used in these sections to refer to the levels of protection afforded by the policy. Moreover, these subsections clearly indicate that the General Assembly knew when and how to use the words "insured" or "person" and would have used those words in subsection (C) if that was what it intended "coverage" to mean.

114 (Ct. App. 2002) (holding a step-down provision along with an out-of-state provision in an Ohio insurance policy did not create an ambiguity voiding coverage).

Initially, we note *Hansen* is not controlling of our decision here as it involved Ohio insurance provisions drafted in accordance with Ohio law and did not address section 38-77-142. The accident in that case occurred in 1998, prior to the effective date of the statute. *See Cowan v. Allstate Ins. Co.*, 357 S.C. 625, 626, 594 S.E.2d 275, 276 (2004) (noting the General Assembly enacted section 38-77-142 in 1997 and it became effective on March 1, 1999). Although the circuit court recognized this fact, it nevertheless referenced the case in support of its conclusion.

Likewise, several decisions GEICO additionally references for the proposition that coverage for insureds may be reduced from the policy amount to the statutory minimums are not controlling here as they, like *Hansen*, involve accidents that occurred prior to the effective date of section 38-77-142, and the decisions do not address the statute's application. *See, e.g., United Servs. Auto. Ass'n v. Markosky*, 340 S.C. 223, 530 S.E.2d 660 (Ct. App. 2000); *Universal Underwriters Ins. Co. v. Metro. Prop. & Life Ins. Co.*, 298 S.C. 404, 380 S.E.2d 858 (Ct. App. 1989). To the extent the concurrence/dissent maintains the validity of step-down provisions has already been established by this Court, it is mistaken. Although it refers to the Court of Appeals's decision in *Universal Underwriters*, that case cannot possibly control our decision here because the accident in *Universal Underwriters* occurred at least a decade prior to the effective date of section 38-77-142. In any event, we are not limited by a decision of the Court of Appeals, as this Court exercises *de novo* review of public policy issues. The General Assembly is presumed to know the law, so in our view, the enactment of section 38-77-142 could be perceived as a response to these earlier decisions. *See Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 536, 725 S.E.2d 693, 696 (2012) (stating "we presume the General Assembly is 'aware of the common law'" when enacting subsequent legislation (citation omitted)).

In viewing the plain wording of section 38-77-142, we find subsections (A) and (B) require a policy for liability insurance to contain a provision insuring the named insureds and permissive users against liability for damage incurred "within the coverage of the policy." Subsection (B) additionally contains a provision regarding notice that states the mere failure to turn over a motion or complaint will not void coverage. Finally, subsection (C) provides that no policy provision may limit *or reduce* the coverage required by *this section*, which refers to section 38-77-142, or else it is void.

We think it is significant that section 38-77-142 provides insurers must provide liability coverage to insureds "within the coverage of the policy" and may not limit or reduce liability coverage in the policy below the amount provided *in this section*, meaning section 38-77-142. Thus, it is the face amount of the coverage that is relevant under section 38-77-142, not the statutory minimum limits of liability coverage set forth in section 38-77-140, which are not even mentioned in the statute.[7] In contrast to the circuit court's interpretation, we believe the General Assembly could have simply stated coverage may not be reduced below the statutory minimum limits and/or below the amount provided in section 38-77-140, if that was its intent. However, it did not do so. Here, the circuit court has engrafted an additional restriction into section 38-77-142 that was not included by the General Assembly by determining coverage may be reduced to the statutory minimum, in direct contravention to the explicit language of section 38-77-142(C) that coverage may not be reduced below the coverage in the policy.

The General Assembly, in considering section 38-77-142, contemplated how automobile insurance is actually marketed. It realized that the actual policy containing any exclusions or limitations is not provided contemporaneously with the entering of the insurance agreement. As a result, the General Assembly specifically included language in section 38-77-142(C) prohibiting provisions in the policy that limit or reduce coverage:

> (C) Any endorsement, **provision**, or rider attached to or **included in any policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section is void**.

S.C. Code Ann. § 38-77-142(C) (2002) (emphasis added).

Therefore, once the face amount of coverage is agreed upon, it may not be arbitrarily reduced or limited by conflicting policy provisions that effectively retract this stated coverage. Any other interpretation of section 38-77-142(C) would render the section useless, and the General Assembly is presumed not to perform useless acts. *See Denene, Inc. v. City of Charleston*, 352 S.C. 208, 212, 574 S.E.2d 196, 198 (2002) ("The Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something." (citing

---

[7] Moreover, the Declarations page of the Murrys' policy explicitly states: "This is a description of your *coverage*" and it lists bodily injury liability coverage of $100,000/$300,000. (Emphasis added.)

*TNS Mills, Inc. v. S.C. Dep't of Rev.*, 331 S.C. 611, 503 S.E.2d 471 (1998)). After agreeing on a policy with $100,000 in stated liability coverage for the named insureds, GEICO should not be permitted to subsequently reduce it with what it deems an "exclusion" in the policy.

There is, indeed, a wide divergence of authority in this area, as courts have considered the statutory schemes, case law, and public policy determinations in their own jurisdictions in scrutinizing provisions attempting to reduce or eliminate coverage to family members. *See* Martin J. McMahon, Annotation, *Validity, Under Insurance Statutes, of Coverage Exclusion for Injury to or Death of Insured's Family or Household Members*, 52 A.L.R.4th 18 (1987 & Supp. 2014) (discussing a variety of scenarios in which courts have examined such provisions). There is no true consensus.

In one case, *Lewis v. West American Insurance Co.*, 927 S.W.2d 829 (Ky. 1996), the Supreme Court of Kentucky found a step-down provision was void as against that state's public policy. The Kentucky court focused on two key points: (1) a customer's motivation in purchasing liability insurance above the statutory minimum is to obtain increased protection for anyone injured; and (2) the fact that the only possible justification for these types of exclusions is to prevent the possibility of collusion among family members, a concern which has been mostly abrogated in other contexts.

In *Lewis*, the court acknowledged that neither Kentucky's state constitution nor its statutes addressed family exclusions, so it would turn to its court decisions to determine the state's public policy. *Id.* at 836. The court stated it has long been recognized that, where there is no legislative prohibition on a certain character of agreement, before a court is authorized to declare it void "it must appear that such an agreement or contract has a tendency to injure the public or is against the public good, or is contrary to sound policy . . . ." *Id.* at 835 (citation omitted). The court observed that, "[w]ith the erosion of the immunities provided by the doctrines of interspousal and parental immunity, insurance companies sought to protect their interests by inserting family exclusions into their insurance contracts." *Id.* at 832. Over the years, the purported justification for those rules, the possibility of fraud and collusion, was determined to no longer justify the hardships imposed by these rules. *Id.* The court found the family exclusion "prevents a specific class of innocent victims from receiving adequate financial protection" and is based entirely on the person's status. *Id.* "Without documentation or factual basis, every member of this excluded class is labeled high risk and branded as being more likely to engage in collusion and fraud." *Id.* The court concluded, "To uphold the

family exclusion would result in perpetuating socially destructive inequities." *Id.* at 833.

>Family exclusions are injurious to a substantial segment of the citizens of our Commonwealth.  They deny injured persons the ability to rely upon the insurance coverage purchased by the policyholder.  As a result, seriously injured accident victims will suffer financial hardship if family exclusion clauses are validated.  Almost every member of the public is potentially a member of this excluded class.  The exclusion is overly broad, based upon surmise, and against the public good.

>It is time for us to take the next logical step . . . .  Thus, we hold that family exclusion provisions in liability insurance contracts violate the public policy of this Commonwealth and are unenforceable.

*Id.* at 836.  We agree with the court's reasoning in *Lewis*.  To allow an insurer to determine the extent to which an injured party can recover within the insured's policy coverage based solely on a familial relationship is arbitrary and capricious and violative of public policy.  *See Mut. of Enumclaw Ins. Co. v. Wiscomb*, 643 P.2d 441, 444 (1982) ("This exclusion becomes particularly disturbing when viewed in light of the fact that this class of victims is the one most frequently exposed to the potential negligence of the named insured.  Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings.  Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured."), *cited with approval in Lewis*, 927 S.W.2d at 832-33; *see also Factory Mut. Liab. Ins. Co. of Am. v. Kennedy*, 256 S.C. 376, 380-81, 182 S.E.2d 727, 729 (1971) (stating liability insurance not only affords protection to insured motorists, it serves the important "public purpose of affording protection to *innocent victims* of motor vehicle accidents" (citation omitted) (emphasis added)).

As written by GEICO, the policy in the current matter provides very limited coverage to families where those injured would otherwise undisputedly fall within the defined class of "insureds."  As noted above, children injured while being driven to school by a parent would come under the family step-down provision, and thus only the statutory minimum limit would be available, regardless of the actual policy coverage purchased by the parent.  The exclusion would also apply to the transportation of infants in family vehicles, where collusion could not be seriously asserted.  Likewise, a husband and wife traveling together, as happened

in the current appeal, would have only the statutory minimum amount, not the coverage provided for in the policy.  In this case involving the Murrys, there can be no possibility of collusion, as both of the named insureds tragically perished in the accident.

The policy provision here has far-reaching effects that can impact a substantial segment of the population, as it serves not only to markedly reduce coverage to family members, but it even reduces the policy's coverage to the *named insureds*, as happened with the Murrys.  The legislative purpose of affording protection to the innocent victims of motor vehicle accidents is eviscerated by GEICO's reduction in coverage to injured family members, who are no less innocent victims in accidents solely because they are injured by the negligence of a family member.  It would indeed be an unusual public policy that would condone denying coverage to a child where he or she is catastrophically injured while being driven by a parent to school, but would allow recovery where the parent injures a stranger while on the way to work.

Ultimately, regardless of the split of authority from other jurisdictions, we find the clear terms of section 38-77-142 are controlling of this state's public policy and justify the result we reach today.[8]  In this case, the Murrys, the named

---

[8]  We disagree with the position taken by the concurrence/dissent that section 56-9-20(d) of the MVFRA somehow serves to thwart the application of section 38-77-142(C) because the Murrays purchased coverage over the statutory minimum limits.  This assertion rests on the premise that "excess" coverage is not part of the insurance policy that is subject to the MVFRA and, consequently, its public policy considerations.  *See* S.C. Code Ann. § 56-9-20(d) (2006) (stating "excess or additional coverage shall not be subject to the provisions of this chapter," and "the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this article [Article 1 of Chapter 9]").  However, by its express terms, section 56-9-20(d) limits its reach to the provisions in the MVFRA.  *Id.* (stating excess coverage "shall not be subject to the provisions of this chapter," i.e, Chapter 9 of Title 56); *see id.* § 56-9-10 ("This chapter [Chapter 9 of Title 56] may be cited as the 'Motor Vehicle Financial Responsibility Act.'").  As a result, section 56-9-20(d) has no bearing on the application of *other* motor vehicle laws, such as section 38-77-142, or the related consideration of our state's public policy.  *See generally id.* § 56-9-100 ("This chapter [Chapter 9 of Title 56] shall in no respect be considered a repeal of any other provision contained in this Title or the motor vehicle laws of this State but shall be considered as supplemental and cumulative thereto.").

insureds, purchased a policy with liability coverage limits of $100,000 per person and $300,000 per accident for bodily injury, and $50,000 per accident for property damage.  In our view, GEICO has improperly attempted to reduce the coverage in the policy to the named insureds by means of the step-down provision, which it has characterized as an "exclusion."  We find this provision is in direct contravention to the prohibition set forth in section 38-77-142.  In addition, to allow an insurer to determine the extent to which an injured party can recover within the insured's policy coverage based solely on a familial relationship is arbitrary, capricious and injurious to the public good.  *See Lewis*, 927 S.W.2d  at 836.  For these reasons, the family step-down provision is void as against the public policy of this state.

A provision that is against public policy is void *ab initio* and, because it is deemed legally never to have come into existence, it is incapable of being enforced by courts.  16 Richard A. Lord, *Williston on Contracts* § 49:12 (4th ed. 2000).  We see no reason to depart from this procedure here, as suggested in the concurrence/dissent, as it would be a hollow victory indeed for the prevailing parties if we were to enforce the offending provision here and restrict relief to prospective cases only.  Where courts have found insurance provisions to be void as against public policy, they have, as a matter of course, refused to give any effect to those provisions in the appeals before them.  *See generally Lewis v. W. Am. Ins. Co.*, 927 S.W.2d 829, 836 (Ky. 1996); *Watters v. Dairyland Ins. Co.*, 361 N.E.2d 1068 (Ohio Ct. App. 1976); *Ryan v. Knoller*, 695 A.2d 990 (R.I. 1997).

## IV.  CONCLUSION

We agree with the circuit court that GEICO's policy is not ambiguous, but we conclude the family step-down provision, which reduced the coverage under the liability policy from the stated policy amount to the statutory minimum, is violative of public policy and is, therefore, void.  The provision not only conflicts with the mandates set forth in section 38-77-142, but its enforcement would be injurious to the public welfare.

**AFFIRMED IN PART, REVERSED IN PART.**

**TOAL, C.J., and Acting Justice James E. Moore, concur.  PLEICONES, J., concurring in part and dissenting in part in a separate opinion in which KITTREDGE, J., concurs.**

**JUSTICE PLEICONES:**  I agree with the majority that the insurance policy at issue here is not ambiguous, but disagree with the finding that the family step-down provision offends South Carolina's public policy.  I therefore concur in part and dissent in part, and would therefore affirm the circuit court order.

The majority finds the family step-down provision offends public policy as expressed by the General Assembly in S.C. Code Ann. §38-77-142 (C) (2006).  In my opinion, reliance on § 38-77-142 is misplaced here, as that statute is concerned with the persons who must be covered under an automobile insurance policy, and nothing in the family step-down alters the individuals  covered by the GEICO policy.  In my view, the relevant statutes against which we should judge the step-down are S.C. Code Ann. 38-77-140 (2006)[9] and S.C. Code Ann. § 56-9-20 (d)(2006).[10]  I find nothing in the family step-down provisions that offends the policies expressed in these statutes.

Section 38-77-140 provides that all South Carolina automobile insurance policies must contain "a provision insuring the persons defined as insured against losses from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles . . ." and then establishes the minimum liability limits.  § 38-77-140. The statute concludes "Nothing in this article prevents an insurer from issuing, selling, or delivering a policy providing liability coverage in excess of these requirements." *Id*.  Section 38-77-140 is the statute that establishes the minimum monetary coverage that must be a part of every South Carolina automobile liability policy.  While this section permits but does not require an insurer to offer a policy that provides coverage in excess of the minimums, § 38-77-140 contains no language analogous to that found in § 38-77-142 (C).

Sections 38-77-142(A) and (B), on the other hand, are concerned with the persons who must be afforded coverage under an automobile insurance policy, and not with the amount of coverage that must be offered.  When § 38-77-142(C) voids any

---

[9] This version of the statute rather than the amended version found in the 2012 Supplement applies here.

[10] This section found in the Motor Vehicle Financial Responsibility Act (MVFRA), S.C. Code Ann. §§56-9-10 *et seq.* (2006 and Supp. 2012), states that any liability coverage offered over the minimum statutory limits is "not subject to the provisions of this chapter."  Thus the legislature has explicitly permitted insurers to offer different terms so long as the mandatory minimum coverage amounts are met.  Nothing in GEICO's family step-down provision offends the MVFRA.

provision "which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section," it is referring only to the persons who must be covered, which is the subject of § 38-77-142, and not to the monetary amount of liability coverage, which is the subject of § 38-77-140. In my opinion, a family step-down provision does not offend § 38-77-142(C) because it does not limit or reduce the type of coverage to an individual identified in § 38-77-142(A) or (B), but rather only reduces the amount of monetary coverage to the minimum limits found in § 38-77-140.

Moreover, we have already decided that an automobile insurance policy may contain a provision stepping-down coverage to minimum limits without offending public policy. *Universal Underwriters Ins. Co. v. Metropolitan Prop. and Life Ins. Co.*, 298 S.C. 404, 380 S.E.2d 858 (Ct. App. 1989) (insurers have the right to limit their liability within statutory limits, and while permitted to offer additional coverage, are only required to provide the mandatory minimums). In my opinion, given the pervasive statutory regulation of automobile insurance policies, it is for the General Assembly and not for the Court to decide that a family step-down provision offends South Carolina's public policy. That the legislature has not acted to alter the rule announced in *Universal Underwriters* indicates to me that we were correct in holding that step-downs are valid. Finally, if we are to change the rules and now prohibit step-down provisions in automobile insurance policies, we should do so prospectively. Such a delay would permit both insurers and insureds entering contracts after the date this opinion becomes final to decide what coverage they will offer, and what coverage they will buy.

I would affirm.


**KITTREDGE, J., concurs.**