# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Nationwide Insurance Company of America,
Respondent,

v.

Kristina Knight, individually and as Personal
Representative of the Estate of Daniel P. Knight,
Petitioner.

Appellate Case No. 2020-000026

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Greenville County
William H. Seals Jr., Circuit Court Judge

———————

Opinion No. 28028
Heard February 2, 2021 – Filed May 12, 2021

———————

## AFFIRMED

———————

Edwin L. Turnage, Harris & Graves, PA, of Greenville,
for Petitioner.

Wesley Brian Sawyer, Murphy & Grantland, PA, of
Columbia, for Respondent.

———————

**JUSTICE FEW:** Kristina Knight agreed to an endorsement to her Nationwide
automobile insurance policy providing the coverage in the policy would not apply

to her husband. She now claims the endorsement excluding coverage for her husband violates public policy and Nationwide cannot enforce it. We find the exclusion is clear and unambiguous and is not in violation of any statute. Therefore, we hold the exclusion is enforceable.

## I.      Facts and Procedural History

Nationwide Insurance Company of America issued an automobile insurance policy to Kristina Knight for her 1996 Ford Ranger. The policy provided $50,000 per person and $100,000 per accident in liability coverage and in uninsured motorist (UM) coverage. Knight also purchased $50,000 per person and $100,000 per accident in underinsured motorist (UIM) coverage.

Knight signed an exclusion, titled "Voiding Auto Insurance While Named Person is Operating Car," as an endorsement to the policy. The exclusion lists her husband, Danny Knight, as the excluded driver under the policy and provides "all coverages in your policy are not in effect while Danny Knight is operating any motor vehicle."[1] The policy itself also references the endorsement and provides, "The following driver(s) are excluded from all coverages and all vehicles on the policy: Danny Knight."

During the policy period, Danny was tragically killed in a motorcycle accident. Knight, as personal representative of Danny's estate, recovered $25,000 in UIM coverage under Danny's motorcycle insurance policy with Progressive Casualty Insurance Company and $25,000 in UIM coverage under a policy with ACCC Insurance Company insuring a different vehicle Danny owned.

Knight made a claim with Nationwide to recover an additional $25,000 in UIM coverage under her insurance policy. Nationwide denied the claim and filed this lawsuit asking the trial court to declare Nationwide did not have to pay the $25,000 because Danny was excluded from all coverages under the policy.

Both parties filed motions for summary judgment. The trial court granted Nationwide's motion and denied Knight's motion. The trial court held "'all

---

[1] Subsection 38-77-30(7) of the South Carolina Code (2015) provides a spouse of any named insured is an "insured" under an insurance policy while resident of the same household. But for the exclusion, Danny would be an "insured" under the policy.

coverages' in the Nationwide policy were 'not in effect' at the time of the accident and [Danny] was specifically excluded and [Knight] is not entitled to collect UIM coverage from Nationwide." The court of appeals affirmed. *Nationwide Ins. Co. of Am. v. Knight*, 428 S.C. 451, 835 S.E.2d 538 (Ct. App. 2019). We granted Knight's petition for a writ of certiorari to review the court of appeals' decision. We affirm.

## II. Discussion

We begin our analysis of coverage under any insurance policy by considering the language of the policy. In a public policy challenge to the validity of an insurance policy provision, we then examine the applicable statutes to determine whether the provision violates any legislatively-expressed public policy.

### A. Terms of the Policy

The insuring language in Knight's policy provides several separate "coverages," including liability, UM, and UIM. The exclusion in the policy states, "With this endorsement, all coverages in your policy are not in effect while Danny Knight is operating any motor vehicle." The exclusion is unambiguous and clearly provides "all coverages" are "not in effect" while Danny is operating "any motor vehicle." Danny was operating a motor vehicle at the time of his tragic accident and death. Therefore, the UIM coverage in the Nationwide policy was not in effect.

### B. Public Policy

Insurance companies and insureds are generally free to contract for exclusions or limitations on coverage. *Jordan v. Aetna Cas. & Sur. Co.*, 264 S.C. 294, 297, 214 S.E.2d 818, 820 (1975); *see also Pa. Nat'l. Mut. Cas. Ins. Co. v. Parker*, 282 S.C. 546, 551, 320 S.E.2d 458, 461 (Ct. App. 1984) ("Reasonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted."). In *Williams v. Government Employees Insurance Co. (GEICO)*, 409 S.C. 586, 762 S.E.2d 705 (2014), we explained, "As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." 409 S.C. at 598, 762 S.E.2d at 712 (citing *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535-36, 514 S.E.2d 327, 330 (1999); *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 523, 377 S.E.2d 569, 570 (1989); *Cobb v. Benjamin*, 325 S.C. 573, 580-81, 482 S.E.2d 589, 593 (Ct. App. 1997)).

To be clear, however, this Court has no authority to invalidate an automobile insurance policy provision simply because we believe it is inconsistent with our own notion of "public policy." *See Burns*, 297 S.C. at 523, 377 S.E.2d at 570 (rejecting a challenge to the validity of an exclusion in an automobile insurance policy, and stating, "It is the responsibility of this Court to construe statutes; we have no power to legislate"); *S.C. Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct. App. 1989) ("Once the Legislature has made that choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy."). Rather, the General Assembly establishes the public policy relating to automobile insurance and enacts statutes to let the public and the courts know what that policy is. When an insured challenges a policy provision on the ground the provision violates public policy, the Court's authority is limited to determining whether the policy provision violates a statute.

This was the challenge the Court heard in *Williams*. The insured filed a declaratory judgment action claiming a "family step-down provision" in its automobile insurance policy violated public policy. 409 S.C. at 591, 762 S.E.2d at 708. The three-Justice majority of this Court, the two-Justice dissent, and the circuit court judge who heard the case (now-Justice James), all determined the policy provision was clear and unambiguous. All agreed the effect of the policy provision was to reduce the available liability insurance for non-named insureds from the $100,000 limits purchased by the named insured to the $15,000 statutory mandatory minimum limits. *See Williams*, 409 S.C. at 597, 762 S.E.2d at 711 (majority discussing the unambiguous effect of the policy provision and agreeing with circuit court); 409 S.C. at 608, 762 S.E.2d at 717 (Pleicones, J., dissenting) (agreeing with majority on this point).

The *Williams* Court then addressed whether the unambiguous family step-down provision violated subsection 38-77-142(C) of the South Carolina Code (2015). 409 S.C. at 599-604, 762 S.E.2d at 712-15. As is often the case, section 38-77-142 is not crystal clear. After a lengthy analysis, the *Williams* majority found the effect of the statute was to prevent other policy provisions from reducing the face amount of liability insurance policy limits purchased by the insured. The majority stated, relying particularly on subsection 38-77-142(C), "Therefore, once the face amount of coverage is agreed upon, it may not be arbitrarily reduced or limited by conflicting policy provisions that effectively retract this stated coverage." 409 S.C. at 604, 762 S.E.2d at 715. Based on this interpretation of section 38-77-142, the *Williams* majority concluded the family step-down provision violated subsection 38-77-142(C) because it reduced the agreed-upon policy limits below the face amount

of coverage for family members of the named insured. 409 S.C. at 608, 762 S.E.2d at 717.

The *Williams* dissent did not agree with the majority's interpretation of section 38-77-142, and therefore did not agree that subsection 38-77-142(C) rendered the step-down provision unenforceable. 409 S.C. at 608-10, 762 S.E.2d at 717-18 (Pleicones, J., dissenting). The circuit court also did not agree. 409 S.C. at 593, 762 S.E.2d at 709. Nevertheless, the disagreement was on how to interpret section 38-77-142, not on the Justices' different conceptions of public policy. The majority view became the official interpretation of section 38-77-142 by a three to two vote.[2]

We recently considered another public policy challenge to the enforceability of an automobile insurance policy provision. *Nationwide Mut. Fire Ins. Co. v. Walls*, Op. No. 28012 (S.C. Sup. Ct. filed March 10, 2021) (Shearouse Adv. Sh. No. 8 at 56). In *Walls*, the insured claimed two step-down provisions in the policy were unenforceable under the same section we considered in *Williams*, section 38-77-142. *Walls*, (Shearouse Adv. Sh. No. 8 at 57). Like the Court did in *Williams*, and as we must do here, we considered only whether the policy provisions violated the applicable statute. *Walls*, (Shearouse Adv. Sh. No. 8 at 60 n.3). Relying on the *Williams* interpretation of section 38-77-142, we held that once the insurance company sold the liability coverage, section 38-77-142 prohibited the insurance company from reducing the amount of the agreed-upon coverage. *Walls*, (Shearouse Adv. Sh. No. 8 at 63). Thus, we did no more in *Walls* than consider whether the step-down provisions violated the legislatively-declared public policy as set forth in a statute. *See Walls*, (Shearouse Adv. Sh. No. 8 at 61) (holding "section 38-77-142(C), as interpreted by this Court in *Williams*, prohibits any step-down provisions in a liability policy's coverage").

---

[2] We hesitate to put too much emphasis on the fact the General Assembly left the interpretation of section 38-77-142 in *Williams* intact through the six years and three legislative sessions that have elapsed since then, but it is true. This Court has relied in other cases on legislative inaction to validate our prior interpretation of a statute, though the interval of time was considerably longer in the following cases than it has been here. *See, e.g., York v. Longlands Plantation*, 429 S.C. 570, 576, 840 S.E.2d 544, 547 (2020) (noting the General Assembly's inaction after we interpret a statute is some indication it agrees with our interpretation); *McLeod v. Starnes*, 396 S.C. 647, 660, 723 S.E.2d 198, 205 (2012) (same); *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003) (same); *State v. 192 Coin-Operated Video Game Machs.*, 338 S.C. 176, 188, 525 S.E.2d 872, 879 (2000) (same).

To the extent the *Williams* Court made any suggestion that its ruling on the public policy challenge was not based on the specific provisions of a statute, our opinion in *Walls* corrected that. The members of this Court may still disagree on how the language of section 38-77-142 should have been interpreted in *Williams*, *see Walls*, (Shearouse Adv. Sh. No. 8 at 65-73) (Kittredge, J., dissenting), but we cannot disagree that in *Walls* we merely applied the statute—as interpreted by the majority in *Williams*—to the policy provision. Similarly, in this case—in any case—all we may do is apply the relevant statutes to the policy provision.

### C.   Automobile Insurance Statutes

We turn now to whether any automobile insurance statute prohibits the policy provision in this case. Knight argues the provision violates section 38-77-340 of the South Carolina Code (2015), which provides,

> Notwithstanding the definition of 'insured' in Section 38-77-30, the insurer and any named insured must, by the terms of a written amendatory endorsement, the form of which has been approved by the director or his designee, agree that coverage under such a policy of liability insurance shall not apply while the motor vehicle is being operated by a natural person designated by name. The agreement, when signed by the named insured, is binding upon every insured to whom the policy applies and any substitution or renewal of it. However, no natural person may be excluded unless the named insured declares in the agreement that (1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles or (2) an appropriate policy of liability insurance or other security as may be authorized by law has been properly executed in the name of the person to be excluded.

As is often the case, section 38-77-340 is not crystal clear. The dual purposes of the statute, however, are clear enough. First, the statute permits an insured—like Knight—to purchase insurance for herself at a reasonable rate without having to pay the cost of insuring the excluded driver, whose bad driving record could make the cost of the policy much higher, if not prohibitive. *See Lovette v. U.S. Fid. & Guar. Co.*, 274 S.C. 597, 600, 266 S.E.2d 782, 783 (1980) (stating the purpose of this

section is to "alleviate the problem often faced by the owner of a family policy, who . . . has a relatively safe driving record but is forced to pay higher premiums because another member of the family . . . is by definition also included in the policy coverage" (quoting Note, *The South Carolina Insurance Reform Act (Part I): "No Fault" and Contributory Negligence—A Synopsis and Appraisal*, 26 S.C. L. Rev. 705, 726 (1975))). Second, the statute ensures a named insured—like Knight—may not exclude a costly resident relative—like Danny—unless the excluded person has turned in his driver's license or is insured under his own policy. *See Lovette*, 274 S.C. at 600, 266 S.E.2d at 784 (recognizing the legislative purpose "to prevent persons so excluded from driving without insurance").

As our court of appeals has recognized, the dual purposes of section 38-77-340 are "*part of our state's public policy*." *Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.*, 406 S.C. 534, 541, 753 S.E.2d 437, 441 (Ct. App. 2013). In other words, the public policy of this State—as expressed in section 38-77-340—is to promote the use of an exclusion such as the one in Knight's policy because it both enables good drivers to purchase economically-priced insurance and requires excluded drivers to turn in their driver's license or purchase other insurance before they drive on our roads.

Thus, we interpret section 38-77-340 to require that before the insurance company and an insured may exclude a driver like Danny, they "must . . . agree" in writing "that coverage under such a policy of liability insurance shall not apply," and they must "declare[] in the agreement" that the excluded person either turned in his driver's license or is otherwise insured. We find the public policy set forth in section 38-77-340 is to promote the sort of policy provision at issue in this case, and nothing in section 38-77-340 prevents Nationwide from enforcing the policy provision excluding Danny from all coverage under the policy.

Knight argues, however, the language of section 38-77-340 is different from the language of the policy provision, and the statutory language should control. In particular, she argues the statute provides "such a policy of liability insurance shall not apply while the motor vehicle is being operated." She argues the word "the" in the statute in place of the word "any" in the policy provision indicates a legislative intent to exclude coverage only when the excluded person is driving the vehicle listed in the policy. Construing section 38-77-340 in this way, she argues, indicates the General Assembly intended to allow such a provision to apply only to liability coverage, not to UIM coverage. We disagree. The argument overlooks the relationship between the terms of an insurance policy and the statutes in which our General Assembly sets forth public policy. While there are statutes that permit certain exclusions, the power to exclude coverage in an insurance policy derives not

from any statute, but from the right all parties have to contract for coverage or to exclude coverage. *Jordan*, 264 S.C. at 297, 214 S.E.2d at 820. Statutory expressions of public policy are merely limits on the power to exclude coverage.

Knight also argues the policy provision violates section 38-77-160 of the South Carolina Code (2015) because it excludes statutorily required UIM coverage.[3] We disagree on this point as well. "[S]tatutorily required coverage is that which is required to be offered or provided." *Carter v. Standard Fire Ins. Co.*, 406 S.C. 609, 616, 753 S.E.2d 515, 519 (2013) (quoting *Ruppe v. Auto-Owners Ins. Co.*, 329 S.C. 402, 404-05, 496 S.E.2d 631, 632 (1998)). Thus, UIM coverage is statutorily required coverage because it must be offered.[4] However, UIM coverage is not mandatory because an insured can choose whether or not to purchase it. *Carter*, 406 S.C. at 621-22, 753 S.E.2d at 521-22. Unlike UIM coverage, liability coverage is statutorily required coverage that is also mandatory. *See* S.C. Code Ann. § 38-77-140(A) (2015) (providing an automobile insurance policy may not be issued unless it contains liability coverage). To interpret section 38-77-340 as prohibiting the exclusion of optional UIM coverage for a named individual but allowing the exclusion of mandatory liability coverage for the same individual, as Knight argues, would be illogical. Therefore, we find the exclusion does not violate section 38-77-160.

### III. Conclusion

Knight and Nationwide agreed to exclude Danny from all coverages under the policy. No statute prohibits the exclusion. We hold the exclusion is valid and Knight cannot recover UIM coverage for Danny's accident under her insurance policy with Nationwide.

---

[3] Knight argues—for the same reason—the policy provision violates section 38-77-150 of the South Carolina Code (2015), which mandates UM coverage in every automobile insurance policy. We decline to address this argument in full because Knight seeks only UIM coverage under the policy.

[4] S.C. Code Ann. § 38-77-160 (providing automobile insurance carriers "shall . . . offer, at the option of the insured, underinsured motorist coverage").

**AFFIRMED**.


**BEATTY, C.J., and HEARN, J., concur. KITTREDGE, J., concurring in a separate opinion in which JAMES, J., concurs.**

**JUSTICE KITTREDGE:** I concur in result. I write separately to note my rejection of the majority's view of *Williams v. GEICO*[5] and especially *Nationwide Mutual Fire Insurance Co. v. Walls*.[6] While joining the majority in result today, I adhere to my dissent in *Walls*.

**JAMES, J., concurs.**

---

[5] *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 598, 762 S.E.2d 705, 712 (2014).
[6] *Nationwide Mut. Fire Ins. Co. v. Walls*, Op. No. 28012 (S.C. Sup. Ct. filed Mar. 10, 2021) (Shearouse Adv. Sh. No. 8 at 56).