LOCKEMY, C.J.:
**351 Following a police chase that ended in a deadly single-car accident, Nationwide Mutual Fire Insurance Company brought a declaratory judgment action against Sharmin Walls, **352 Randi Harper, and the estate of Christopher Timms (collectively, Respondents) to determine the amount due under an automobile liability policy. The trial court found Nationwide must provide the policy's maximum coverage of $300,000, despite policy exclusions that reduced coverage to the statutory minimum limit of $50,000 per occurrence when an accident occurred while committing a felony or fleeing law enforcement. On appeal, Nationwide argues the trial court erred in finding the exclusions violated public policy and were therefore unenforceable. We reverse.
FACTS
The facts of this case are not in dispute. On July 11, 2008, Respondents were passengers in a vehicle owned by Walls and being driven by Korey Mayfield. When a state highway patrol officer attempted to stop the vehicle for speeding, Mayfield ignored the passengers' request to pull over and instead accelerated down the highway. Mayfield led the officer on a high-speed chase-at one point reaching a speed of 109 miles per hour-before exiting the highway and speeding down a residential road. The officer then terminated his pursuit. Approximately one mile from where the chase ended, however, Mayfield lost control of the vehicle and crashed into a group of trees.[1] Timms was killed in the collision, while Mayfield, Harper, and Walls suffered catastrophic injuries. Mayfield was ultimately charged with and pled guilty to reckless homicide, a felony.
At the time of the crash, Walls was a named insured on a Nationwide insurance policy with liability coverage of $100,000 per person and $300,000 per accident. With respect to the liability coverage, the policy contained the following provision:
This coverage does not apply, with regard to any amount above the minimum limits required by the South Carolina Financial Responsibility Law [ (MVFRA) ][2] as of the date of the loss, to:
...
**353 6. Bodily injury or property damage caused by:
a) you;
*134 b) a relative; or
c) anyone else while operating your auto;
(1) while committing a felony; or
(2) while fleeing a law enforcement officer.
Relying on the above provision, Nationwide tendered the undisputed minimum cover of $50,000 to Respondents for their injuries. Respondents received an additional $50,000 from Mayfield's liability insurer. Walls's policy did not include underinsured motorist coverage.
Nationwide subsequently instituted a declaratory judgment action against Respondents, contending the exclusions prevented them from receiving coverage in excess of $50,000 because their injuries occurred while Mayfield was fleeing law enforcement. Respondents filed an answer, asserting the exclusions were unenforceable, ambiguous, and/or violated public policy.
The matter proceeded to a bench trial, during which Nationwide presented evidence establishing Mayfield was fleeing law enforcement at the time of the accident and had pled guilty to a felony as a result. At the trial's conclusion, the trial court agreed Mayfield's conduct fell within the ambit of the policy exclusions but nevertheless concluded Respondents were entitled to the full coverage of $100,000 per person as stated on the policy's declarations page. In a written order, the trial court reasoned the provisions at issue were unenforceable because (1) Nationwide failed to inform Walls of the exclusions or otherwise place them conspicuously on the insurance policy; (2) the exclusions were ambiguous[3] ; and (3) the exclusions violated the state's public policy of protecting innocent insureds, namely the three passengers who were deemed not at fault in causing the collision.
Soon after the trial court issued its order, our supreme court decided Williams v. Gov't Emp. Ins. Co. (GEICO) , 409 S.C. 586, 762 S.E.2d 705 (2014), holding that a family "step-down" provision violated **354 section 38-77-142 of the South Carolina Code (2015) because it reduced the insured's coverage from the amount stated on the policy's declaration page to the statutory minimum limit. Nationwide filed a motion to reconsider, arguing the trial court made multiple findings of fact unsupported by the evidence and asserting the policy exclusions were reasonable because they only applied to criminal conduct. Furthermore, Nationwide argued Williams was factually distinct from the case at hand because it addressed an arbitrary and capricious family member exclusion, not a criminal conduct exclusion such as those in Nationwide's policy. The trial court denied the motion. Relying on Williams , the trial court found Nationwide's exclusions were unenforceable because they similarly reduced coverage from the amount stated on the face of the policy to the minimum amount required by law. Nationwide appealed.
STANDARD OF REVIEW
"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." Felts v. Richland Cty. , 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." S.C. Farm Bureau Mut. Ins. Co. v. Kennedy , 398 S.C. 604, 610, 730 S.E.2d 862, 864 (2012) (citation omitted).
"In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them." Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co. , 395 S.C. 40, 46-47, 717 S.E.2d 589, 592 (2011) (citation omitted). "However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard." Kennedy , 398 S.C. at 610, 730 S.E.2d at 864. "When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." WDW Props. v. City of Sumter , 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000).
*135 LAW/ANALYSIS
In declining to enforce the policy exclusions, the trial court read our supreme court's decision in Williams to hold that **355 any policy exclusion that reduced the coverage stated on the policy's declarations page to the statutory minimum limit violated section 38-77-142 and was therefore unenforceable. Nationwide contends the circuit court's reading of Williams is overly broad and a criminal conduct exclusion supports, rather than violates, public policy.
"As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." Williams , 409 S.C. at 598, 762 S.E.2d at 712. "While parties are generally permitted to contract as they see fit, freedom of contract is not absolute and coverage that is required by law may not be omitted." Id . "[S]tatutory provisions relating to insurance contracts become part of the insuring agreement. Where there is a conflict between the statute and the terms of the policy, the statutory provisions prevail." Allstate Ins. Co. v. Thatcher , 283 S.C. 585, 587, 325 S.E.2d 59, 61 (1985) (citation omitted).
Section 38-77-140(A) of the South Carolina Code (2015) requires every automobile insurance policy issued in this state to provide a minimum of $25,000 per person and $50,000 per accident in liability coverage. However, an insurer may still contract to provide voluntary coverage in excess of the minimum amounts. Id . Section 38-77-142 provides in part:
(A) No policy or contract of bodily injury or property damage liability insurance covering liability arising from the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of the vehicle ... unless the policy contains a provision insuring the named insured and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured against liability for death or injury sustained or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of the vehicle by the named insured or by any such person. ...
(B) No policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of a ... without an endorsement **356 or provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured, against liability for death or injury sustained, or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of the motor vehicle by the named insured or by any other person. ...
(C) Any endorsement, provision, or rider attached to or included in any policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section is void.
"The purpose of the MVFRA is to give greater protection to those injured through the negligent operation of automobiles." Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co. , 406 S.C. 534, 539, 753 S.E.2d 437, 440 (Ct. App. 2013). "The legislation requires insurance for the benefit of the public, and an insurer may not 'nullify its purposes through engrafting exceptions from liability as to uses which it was the evident purpose of the statute to cover.' " Id . at 539-40, 753 S.E.2d at 440 (citing Penn. Nat'l Mut. Cas. Ins. Co. v. Parker , 282 S.C. 546, 551, 320 S.E.2d 458, 461 (Ct. App. 1984) ). "Similarly, the stated purpose of the chapter on automobile insurance in Title 38 was to implement a complete reform of automobile insurance in order to, among other things, make sure every risk meeting certain criteria was entitled to automobile insurance and prevent the evasion of coverage provided for by that chapter." Williams , 409 S.C. at 599, 762 S.E.2d at 712. "Therefore, our courts will strike down policy provisions that have 'the effect of limiting the coverage requirements of the statute[s].' " Lincoln Gen. Ins , 406 S.C. at 540, 753 S.E.2d at 440. However, "[r]easonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the *136 State as revealed in the various motor vehicle insurance statutes are permitted." Penn. Nat'l. Mut. Cas. Ins. Co. v. Parker , 282 S.C. at 551, 320 S.E.2d at 461.
In Williams , a husband and wife suffered a fatal accident while riding together in a car insured under both their names. 409 S.C. at 591, 762 S.E.2d at 708. Afterwards, a dispute arose concerning the amount GEICO owed under the deceased insureds' liability policy. Id . The estates argued the proper **357 coverage was $100,000, as stated on the policy's declarations page. Id . GEICO asserted it owed only $15,000 based on a family step-down provision that operated to "step down," or reduce, coverage to the statutory minimum limit when the injured party was a family member of the insured.[4] Id . The trial court ruled in favor of GEICO, finding the step-down provision was enforceable because it provided at least the minimum liability coverage mandated by law. Id . at 592, 762 S.E.2d at 708. The estates appealed, and the case was certified to the South Carolina Supreme Court.
On appeal, a three-two majority reversed. The court noted sections 38-77-142(A) and (B) require "a policy for liability insurance to contain a provision insuring the named insureds and permissive users against liability for negligence incurred 'within the coverage of the policy' "-a phrase the majority interpreted as meaning "the face amount of coverage" on the policy, not the minimum amount of coverage required by section 38-77-140. Id . at 603, 762 S.E.2d at 713. The court further noted that the following subsection, section 38-77-142(C), states that any policy that "seeks to limit or reduce the coverage afforded by the provisions required by this section is void." Id . GEICO's policy, however, did precisely that; while appearing on its face to provide $100,000 in liability coverage to a certain class of insureds-defined in the policy, and by statute, to include the named insured and their family members-the policy actually reduced that coverage to the minimum limit by means of the family step-down provision. Id . at 604, 762 S.E.2d at 715. In short, because the family step-down provision directly conflicted with the policy's declarations page that purported to provide a certain amount of coverage to the named insureds and their relatives, the provision was deemed invalid.
After acknowledging a divergence in other jurisdictions as to the validity of family step-down provisions, the majority in Williams focused its discussion on the practical effect of the provision at issue:
The policy provision here has far-reaching effects that can impact a substantial segment of the population, as it serves **358 not only to markedly reduce coverage to family members, but it even reduces the policy's coverage to the named insureds , as happened with the Murrys. The legislative purpose of affording protection to the innocent victims of motor vehicle accidents is eviscerated by GEICO's reduction in coverage to injured family members, who are no less innocent victims in accidents solely because they are injured by the negligence of a family member. It would indeed be an unusual public policy that would condone denying coverage to a child where he or she is catastrophically injured while being driven by a parent to school, but would allow recovery where the parent injures a stranger while on the way to work.
Id . at 606-07, 762 S.E.2d at 716. Accordingly, the majority held the step-down provision violated public policy because it conflicted with the plain language of section 38-77-142 and was injurious to the public welfare. Id. at 604, 762 S.E.2d at 715.
Turning to the instant case, we do not believe Nationwide's flight-from-law enforcement and felony exclusions conflict with a statutory scheme or public policy. Sections 38-77-142(A) and (B) are concerned with the persons who must be afforded coverage under a particular policy. The majority in Williams read section 38-77-142(C) as prohibiting policy provisions that reduce the stated liability coverage to the minimum limit when the policy's declaration page purports to provide a higher amount of coverage to a *137 certain class of insureds. Id . at 603, 762 S.E.2d at 713. Therefore, once the insured agrees to a certain amount of coverage for a class of persons, the insurer may not render that coverage illusory with a contradicting exclusion. See id . at 604, 762 S.E.2d at 715 ("After agreeing on a policy with $100,000 in stated liability coverage for the named insureds, GEICO should not be permitted to subsequently reduce it with what it deems an 'exclusion' in the policy.").
Unlike the step-down provision at issue in Williams , however, Nationwide's policy exclusions do not simultaneously reduce the insured's voluntary coverage. Instead, the exclusions are only triggered in the event an insured seeks coverage for injuries sustained while engaging in certain acts. The exclusion is based not on the injured party's relationship to the insured, but on the conduct of the driver. The policy's coverage **359 remains intact, so long as the injury is not the result of foreseeably dangerous conduct that the insured can reasonably avoid. To that end, we note sections 38-77-142(A) and (B) only require insurers to insure against liability that arises "as a result of negligence in the operation or use of the motor vehicle." (emphasis added). If we were to read Williams as Respondents suggest, any policy provision that excludes voluntary coverage for intentional acts would also violate section 38-77-142. Such an interpretation would essentially eliminate an insurer's ability to limit exposure against avoidable hazards and is not supported by the plain language of the statute. See id . at 598, 762 S.E.2d at 712 ("As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition."); S.C. Farm Bureau Mut. Ins. Co. v. Mumford , 299 S.C. 14, 20, 382 S.E.2d 11, 14 (Ct. App. 1989) ("The principle that one should not be permitted to insure against his own intentional wrongdoing applies to voluntary insurance, not compulsory insurance.").
Furthermore, in enacting section 56-9-20 of the South Carolina Code (2018), the Legislature has permitted insurers to provide different terms to coverage amounts above the minimum limit. That section provides:
Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants this excess or additional coverage, the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this article.
Thus, so long as the mandatory minimum coverage limits are met, an insurer may provide reasonable limitations on optional coverage. It follows then that an insurer may choose not to insure above the minimum limit against conduct that is inherently more dangerous than what is attendant to the regular operation of a vehicle.
Finally, there is no basis for a finding that the flight-from-law enforcement and felony exclusions are arbitrary and **360 capricious. See Williams , 409 S.C. at 605-06, 762 S.E.2d at 716. As discussed above, the exclusions are based not on the identity of the victim, but on the conduct of the driver. To the extent there is a countervailing interest in protecting innocent passengers of a vehicle evading law enforcement, the appropriate balance is struck by the compulsory insurance mandate. Accordingly, because the exclusions discourage certain undesirable behavior while at the same time preserving coverage for innocent victims in the amount deemed appropriate by the General Assembly, we find they do not violate public policy.[5] *138 CONCLUSION
We conclude therefore that nothing in Nationwide's exclusions violate the statutory schemes of Titles 38 and 56 or offends public policy. The provisions unambiguously limit coverage to the statutory minimum limit when an injury occurs during the commission of a felony or flight from law enforcement. Accordingly, the decision of the trial court is
REVERSED .
THOMAS and GEATHERS, JJ., concur.

An accident reconstruction team determined Mayfield was travelling at least seventy-two miles per hour at the time of the crash, nearly forty miles per hour above the legal speed.

S.C. Code Ann. §§ 56-9-10 through -410 (2018).

Respondents concede on appeal that the exclusions are unambiguous.

At the time the policy was issued, section 38-77-140(A) provided for liability coverage with a minimum limit of $15,000 per person.

We note a number of jurisdictions have reached similar conclusions regarding the applicability of criminal conduct-based exclusions. See S. Farm Bureau Cas. Ins. Co. v. Easter , 374 Ark. 238, 287 S.W.3d 537, 541 (2008) (holding eluding-lawful-arrest exclusion did not violate public policy as stated in state's compulsory insurance statute); Thomas v. Benchmark Ins. Co. , 285 Kan. 918, 179 P.3d 421, 432 (2008) (upholding an intentional act exclusion as applied to a police chase); Hix v. Hertz Corp. , 307 Ga.App. 369, 705 S.E.2d 219, 220 (2010) (upholding a felony based exclusion in a rental car policy); Bohner v. Ace Am. Ins. Co. , 359 Ill.App.3d 621, 296 Ill.Dec. 78, 834 N.E.2d 635, 640 (2005) (holding criminal act exclusion did not violate public policy); See Bailey v. Lincoln General Ins. Co. , 255 P.3d 1039, 1048 (Colo. 2011) ("Of course, many jurisdictions, although not recognizing a public-policy requirement for insurers to include intentional or criminal-act exclusions, hold that public policy is not violated where insurers include in liability or excess insurance policies criminal acts or other similar exclusions. ..."); Home Ins. Co. v. Neilsen , 165 Ind.App. 445, 332 N.E.2d 240, 244 (1975) ("[A] person should not be permitted to insure against harms he may intentionally and unlawfully cause others, and thereby acquire a license to engage in such activity."); see also 8 Lee R. Russ & Thomas F. Segalla, Couch on Ins . 3d § 121:92 (1997) ("An exclusion in an automobile policy as to loss while the automobile is used ... while engaged in unlawful flight from police is not against public policy.").