# The Supreme Court of South Carolina

Nationwide Mutual Fire Insurance Company,
Respondent,

v.

Sharmin Christine Walls, Randi Harper, Wendy Timms
in her capacity as Personal Representative of The Estate
of Christopher Adam Timms, Deborah Timms,
Defendants,

Of whom Sharmin Christine Walls and Randi Harper are
the Petitioners.

Appellate Case No. 2019-001596

---

## ORDER

---

The petition for rehearing is denied. The attached opinion is substituted for the
previous opinion, which is withdrawn.

|  |  |
|---|---|
| s/ Donald W. Beatty | C.J. |
| s/ Kaye G. Hearn | J. |
| s/ John Cannon Few | J. |

We would grant the petition for rehearing and affirm the court of appeals' decision.

|  |  |
|---|---|
| s/ John W. Kittredge | J. |
| s/ George C. James, Jr. | J. |

Columbia, South Carolina
June 3, 2021

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Nationwide Mutual Fire Insurance Company,
Respondent,

v.

Sharmin Christine Walls, Randi Harper, Wendy Timms
in her capacity as Personal Representative of The Estate
of Christopher Adam Timms, Deborah Timms,
Defendants,

Of whom Sharmin Christine Walls and Randi Harper are
the Petitioners.

Appellate Case No. 2019-001596

―――――――――

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

―――――――――

Appeal From Anderson County
J. Cordell Maddox, Jr., Circuit Court Judge

―――――――――

Opinion No. 28012
Heard November 19, 2020 – Re-Filed June 3, 2021

―――――――――

### REVERSED

―――――――――

Michael F. Mullinax, of Mullinax Law Firm, P.A., of
Anderson, for Petitioner Sharmin Christine Walls; John
Kirkman Moorhead, of Moorhead LeFevre, P.A., of
Anderson, for Petitioner Randi Harper.

John Robert Murphy and Wesley Brian Sawyer, of Murphy & Grantland, P.A., of Columbia, for Respondent Nationwide Mutual Fire Insurance Company.

Roy T. Willey, IV, and Eric M. Poulin, both of Anastopoulo Law Firm LLC, of Charleston, for Amicus Curiae United Policyholders. Frank L. Eppes, of Eppes & Plumblee, PA, of Greenville, Bert G. Utsey, III, of Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., of Charleston and Joe Brewer, of the Law Office of D. Josey Brewer, of Greenville, for Amicus Curiae The South Carolina Association for Justice.

---

**JUSTICE HEARN:** In this declaratory judgment action, Nationwide relies on flight-from-law enforcement and felony step-down provisions[1] in an automobile liability insurance policy to limit its coverage to the statutory mandatory minimum. Following a bench trial and after issuance of this Court's opinion in *Williams v. Government Employees Insurance Co. (GEICO)*, 409 S.C. 586, 762 S.E.2d 705 (2014), the circuit court held the step-down provisions were void pursuant to Section 38-77-142(C) of the South Carolina Code (2015). The court of appeals reversed. We now reverse the court of appeals and hold that section 38-77-142(C) renders Nationwide's attempt to limit the contracted-for liability insurance to the mandatory minimum void.

## FACTS

Three individuals—Sharmin Walls, Randi Harper, and Christopher Timms— were passengers in a vehicle driven by Korey Mayfield that crashed in Anderson County on July 11, 2008 following a high-speed chase by law enforcement. On the day of the accident, the group left from Walls' home in Walls' vehicle, a Chevrolet Lumina, driven by Mayfield. A trooper with the South Carolina Highway Patrol activated his blue lights after observing the Lumina traveling approximately twelve miles over the speed limit and swerving over the center line. Mayfield refused to pull over, and during the chase, the trooper's vehicle reached speeds of 109 miles per

---

[1] While Nationwide characterized the provisions as exclusions, they are more appropriately denominated as step-downs since, in the event the provisions are triggered, Nationwide is obligated to pay the mandatory minimum limits rather than the liability limit for which the parties contracted.

hour.  All the passengers begged Mayfield to stop the car, but Mayfield refused. Eventually, the trooper received instructions to terminate the pursuit, which he did. Nevertheless, Mayfield continued speeding and lost control of the vehicle.  Timms died in the single-car accident, and Walls, Harper, and Mayfield sustained serious injuries.  After being charged with reckless homicide, Mayfield entered an *Alford* plea. *North Carolina v. Alford*, 400 U.S. 25 (1970).

At the time of the accident, Walls' automobile was insured through her Nationwide policy, which included bodily injury and property damage liability coverage with limits of $100,000 per person and $300,000 per occurrence.  Walls also maintained uninsured motorist (UM) coverage for the same limits, but she did not have underinsured motorist (UIM) coverage.  Walls' liability policy contained the following provisions:

> B. This coverage does not apply, with regard to any amounts above the minimum limits required by the South Carolina Financial Responsibility Law as of the date of the loss, to:
> …
>> 6. Bodily injury or property damage caused by:
>>
>>> a) you;
>>> b) a relative; or
>>> c) anyone else while operating your auto;
>>>
>>>> (1) while committing a felony; or
>>>> (2) while fleeing a law enforcement officer.

In reliance on those provisions, Nationwide paid only $50,000 in total to the injured passengers—the statutory minimum as provided by section 38-77-140—rather than the liability limits stated in the policy.  S.C. Code Ann. § 38-77-140(A)(2) (2015). Safe Auto, Mayfield's insurance company, also paid a total of $50,000 to the passengers.

Nationwide brought this declaratory judgment action requesting the court declare that the passengers were not entitled to combined coverage of more than $50,000 for any claims arising from the accident.  Walls answered, denying there

was any evidence that the flight-from-law enforcement and felony provisions applied.[2]

Following a bench trial, the circuit court held in part that Mayfield was a non-permissive user and that the provisions at issue were unconscionable and void as against public policy. Thus, the circuit court held that Walls, Harper, and Timms' estate were entitled to recover $100,000 per person pursuant to the liability limits in Walls' policy. In the alternative, the court found that due to Mayfield's conduct in attempting to elude the police, the vehicle would be deemed uninsured as to the innocent passengers, and they should be entitled to recover pursuant to the UM provisions of the policy.

Two days after the issuance of the circuit court's order, *Williams v. GEICO*, 409 S.C. 586, 762 S.E.2d 705 (2014) was decided. Nationwide filed a Rule 59(e), SCRCP, motion. At the hearing on that motion, the passengers abandoned their argument with respect to UM coverage. In its post-trial order, the circuit court found that Mayfield was committing a felony and fleeing from the police at the time of the accident. Nevertheless, the circuit court held that the *Williams* decision prohibited step-down provisions pursuant to section 38-77-142(C).

Nationwide appealed, and the court of appeals reversed, holding the provisions did not violate our state's public policy or the statutory schemes of Titles 38 and 56. *Nationwide Mut. Fire Ins. Co. v. Walls*, 427 S.C. 348, 360, 831 S.E.2d 131, 138 (Ct. App. 2019). More specifically, the court of appeals noted that the *Williams* decision interpreted section 38-77-142(C) to prohibit provisions that reduced the contracted-for coverage to the mandatory minimum limit when "the policy's declaration page purport[ed] to provide a higher amount of coverage to a certain class of insureds." *Id.* at 358, 831 S.E.2d at 136-37 (citing *Williams*, 409 S.C. at 603, 762 S.E.2d at 714). The court of appeals distinguished the family step-down provision at issue in *Williams* from the provisions in this case because Nationwide's provisions were not triggered by a party's relationship to the insured, but rather, by the conduct of the driver. *Walls*, 427 S.C. at 358, 831 S.E.2d at 137. Furthermore, the court of appeals noted that full coverage remained when injury was

---

[2] In her answer, Walls also asserted counterclaims and defenses, including: breach of contract regarding the liability, UM, and UIM coverage; bad faith refusal by Nationwide to honor the claims; and unconscionability, asserting that Nationwide's use of the provisions were void as against public policy. Mayfield and the passengers eventually entered into a stipulation of dismissal of the bad faith counterclaim; therefore, that issue is not before this Court.

not the result of "foreseeably dangerous conduct that the insured [could] reasonably avoid." *Id.* at 358-59, 831 S.E.2d at 137. The court of appeals also held that pursuant to section 56-9-20 of the South Carolina Code (2018), insurers were permitted to place reasonable restrictions on coverage above the minimum limits. *Id.* at 359, 831 S.E.2d at 137 (quoting S.C. Code Ann. § 56-9-20(5)(d) (2018)). Therefore, the court of appeals held the provisions were not arbitrary or capricious, and further, the statutory mandatory minimum coverage provided protection to innocent passengers of a vehicle evading law enforcement. *Walls*, 427 S.C. at 359-60, 831 S.E.2d at 137. This appeal—in which only Walls and Harper are involved as appellants—followed.

## ISSUE PRESENTED

Do Nationwide's felony and flight-from-law enforcement step-down provisions violate section 38-77-142(C)?[3]

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland Cty.*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). The determination of whether coverage exists under an insurance policy is an action at law. *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 610, 730 S.E.2d 862, 864 (2012) (quoting *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011)). "'In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them.'" *Bell v. Progressive Direct Ins. Co.*, 407 S.C. 565, 576, 757 S.E.2d 399, 404 (2014) (quoting *Crossmann*, 395 S.C. at 46-47, 717 S.E.2d at 592). "However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard." *Kennedy*, 398 S.C. at 610, 730 S.E.2d at 864 (citing *Crossmann*, 395 S.C. at 47, 717 S.E.2d at 592).

---

[3] At oral argument, counsel for Harper and Walls stated he was not pursuing a public policy argument. While we fully recognize the dissent is correct that courts across the country have upheld similar policy exclusions as not being contrary to public policy, we do not consider that issue because it was abandoned by Appellant. Accordingly, we view the dissent's discussion of public policy as unnecessary since it is neither an issue before us nor a basis for our decision. We reiterate that our decision today is grounded only on the language of the statute and our decision in *Williams*.

# DISCUSSION

Harper and Walls argue that section 38-77-142(C), as interpreted by this Court in *Williams*, prohibits any step-down provisions in a liability policy's coverage. Nationwide contends that section 38-77-142 operates as a mere omnibus provision, defining who must be covered in a liability policy, and that subsection (C) requires that policies not treat covered parties differently from one another. We agree with Harper and Walls.

Section 38-77-142(C) states, "Any endorsement, provision, or rider attached to or included in any policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section is void." S.C. Code Ann. § 38-77-142(C) (2015). Subsections (A) and (B) specify who must be covered in liability insurance policies, including named insureds and permissive users, as well as what injuries must be covered. S.C. Code Ann. § 38-77-142(A)-(B) (2015). More specifically, subsection (A) states in part:

> No policy or contract of bodily injury or property damage liability insurance covering liability arising from the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of the vehicle or may be issued or delivered by an insurer…unless the policy contains a provision insuring the named insured and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured against liability for death or injury sustained or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of the vehicle by the named insured or by any such person.

S.C. Code Ann. § 38-77-142(A) (2015). Subsection (B) similarly provides who and what injuries must be insured and additionally contains a clause regarding notice that states "mere failure of the insured to turn the motion or complaint over to the insurer" would not void coverage if the insured "otherwise cooperate[d] and in no way prejudice[d] the insurer." S.C. Code Ann. § 38-77-142(B) (2015). *See Neumayer v. Philadelphia Indem. Ins. Co.*, 427 S.C. 261, 272-73, 831 S.E.2d 406, 412 (2019) (In upholding notice clauses within insurance policies, we discussed the import of section 38-77-142(B) as demonstrating "the legislature's recognition of the role notice provisions play in insurance contracts."). Therefore, subsections (A) and (B) provide required provisions for liability insurance policies, and once the insurer places the required provisions in the policy with the agreed-upon limits of coverage,

any attempt by the insurer to reduce the coverage afforded by the provisions is void pursuant to subsection (C).

In interpreting the same statutory provision, the *Williams* Court found it significant that section 38-77-142 required insurers to provide liability coverage to insureds "'within the coverage of the policy.'" *Williams*, 409 S.C. at 603, 762 S.E.2d at 714 (quoting S.C. Code Ann. § 38-77-142(A)-(B) (2015)). In that case, a husband and wife—both named insureds—were killed in a car accident when a train struck their vehicle. *Williams*, 409 S.C. at 591, 762 S.E.2d at 708. The couple had a motor vehicle insurance policy with GEICO that included liability limits of $100,000 per person and $300,000 per accident for bodily injury, and $50,000 per accident for property damage. *Id.* Within its policy, GEICO included a step-down provision that reduced coverage to the statutory minimum limits when an insured's relative sustained bodily injury. *Id.* at 592, 762 S.E.2d at 708. Rather than paying the full $100,000 as provided by the couple's policy, GEICO sought to pay the then-statutory minimum of $15,000 pursuant to the family step-down clause. *Id.* The personal representatives of the couple's estates filed a declaratory judgment action to determine the amount of liability proceeds GEICO was required to pay. *Id.* at 592, 762 S.E.2d at 709. The circuit court found in relevant part that the step-down provision was valid and did not violate public policy or section 38-77-142. *Id.* at 593, 762 S.E.2d at 709.

On appeal, this Court held that insurers have the right to "limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." *Id.* at 598, 762 S.E.2d at 712 (citing *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535-36, 514 S.E.2d 327, 330 (1999); *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 523, 377 S.E.2d 569, 570 (1989); *Cobb v. Benjamin*, 325 S.C. 573, 580-81, 482 S.E.2d 589, 593 (Ct. App. 1997)). In examining section 38-77-142, the Court stated that the plain language of subsections of (A) and (B) required a policy to provide coverage for the named insureds and permissive users "against liability for damage incurred 'within the coverage of the policy.'" *Williams*, 409 S.C. at 603, 762 S.E.2d at 714 (citing S.C. Code Ann. § 38-77-142 (A)-(B) (2015)). Further, the Court held that the face amount of coverage was relevant pursuant to section 38-77-142—not the statutory minimum limits of liability. *Williams*, 409 S.C. at 603, 762 S.E.2d at 714 (citing S.C. Code Ann. § 38-77-140 (2015)). In conclusion, the Court stated the family step-down provision violated section 38-77-142's prohibition and public policy. *Id.* at 607, 762 S.E.2d at 717.

Here, like GEICO's family step-down provision in *Williams*, Nationwide's provisions reduce coverage from the contracted-for policy limit of $300,000 per occurrence to the statutory minimum of $50,000 per occurrence for damage caused by an insured while fleeing from law enforcement or engaging in a felony. In light of our interpretation of section 38-77-142(C) in our *Williams* decision, Nationwide's step-down provisions are void. Further, we have previously rejected the argument that section 56-9-20(5)(d) of the South Carolina Code (2018) allows limitations on excess coverage so as to render section 38-77-142(C) inapplicable. *Williams*, 409 S.C. at 607 n.8, 762 S.E.2d at 716 n.8 ("We disagree…that section 56-9-20(d) [sic]…somehow serves to thwart the application of section 38-77-142(C) because the [insureds] purchased coverage over the statutory minimum limits…. [S]ection 56-9-20(d) [sic] has no bearing on the application of *other* motor vehicle laws, such as section 38-77-142…."). Rather, we have held and affirm today that section 38-77-142(C) makes no distinction between mandatory minimum limits and excess coverage. *Id.* at 603, 762 S.E.2d at 714 ("Thus, it is the face amount of the coverage that is relevant under section 38-77-142, not the statutory minimum limits of liability coverage set forth in section 38-77-140…."). Moreover, in reaching this decision, we find it significant that the General Assembly has not amended section 38-77-142 since this Court decided *Williams* in 2014. *See York v. Longlands Plantation*, 429 S.C. 570, 576, 840 S.E.2d 544, 547 (2020) (finding the General Assembly's "silence over the past seven decades" important); *Wigfall v. Tideland Utils, Inc.*, 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003) ("When the Legislature fails over a forty-year period to alter a statute, its inaction is evidence the Legislature agrees with this Court's interpretation.").[4]

---

[4] We reject the dissent's suggestion that our statutory interpretation is a thinly-disguised attempt to legislate from the bench. Our "judicial sleight of hand" is merely an effort to remain faithful to the language of the statute, as interpreted in *Williams*, which the General Assembly has seen fit not to alter in the nearly seven years since the opinion's issuance. Simply put, our decision is controlled by section 38-77-142, and should the General Assembly disagree with our interpretation, it may, of course, correct our construction by codifying certain exclusions or otherwise altering the statute. *See, e.g.*, Ark. Code Ann. § 23-89-205(1)-(2) (West 2020) (providing that an insurer may include an intentional act exclusion, a felony exclusion, and an evasion-from-law-enforcement exclusion); *see also* Ark. Code Ann. § 23-89-214 (West 2020) (expressly prohibiting step-down provisions that reduce coverage when the insured vehicle is involved in an accident and the driver is someone other than the insured).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

**REVERSED.**

**BEATTY, C.J., and FEW, J., concur. KITTREDGE, J., dissenting in a separate opinion in which JAMES, J., concurs.**

**JUSTICE KITTREDGE:** Today, counter to every other jurisdiction in the country, a majority of this Court holds that a clear provision in an insurance policy—one which reduces coverage to the statutory minimum where an insured causes damage while fleeing a law enforcement officer—is unenforceable. We are told this decision reflects the intent and policy of the South Carolina General Assembly as set forth in section 38-77-142 of the South Carolina Code (2015). Specifically, the majority "hold[s] that section 38-77-142(C) renders Nationwide's attempt to limit the contracted-for liability insurance to the mandatory minimum void." I dissent. I would affirm the court of appeals, which I believe correctly held that the provisions reducing liability coverage to the mandatory minimum limit for "committing a felony" or "while fleeing a law enforcement officer" violate neither the statutory laws of South Carolina nor our state's public policy. *Nationwide Mut. Fire Ins. Co. v. Walls*, 427 S.C. 348, 831 S.E.2d 131 (Ct. App. 2019). I would adopt the excellent opinion of the court of appeals in every respect.

## I.

Nationwide Mutual Fire Insurance Company issued a standard automobile liability policy to Sharmin Christine Walls. Subsequently, Walls and several friends decided to drive around Anderson in her Chevrolet Lumina, which was insured by the Nationwide policy. Because Walls had consumed a significant amount of alcohol that day, she allowed one of her friends, Korey Mayfield, to drive her car. The parties agree that Mayfield was a permissive user and, thus, an insured under the policy.[5]

A South Carolina state trooper spotted the Lumina speeding and crossing the yellow center line. The trooper activated his emergency lights and siren and attempted a traffic stop. Mayfield refused to pull over, and a chase ensued, reaching speeds in excess of 100 miles per hour. The trooper eventually abandoned the pursuit for public safety reasons, but his decision made no difference, for despite the lack of pursuit, Mayfield continued to drive dangerously in an effort to evade law enforcement. Shortly thereafter, the Lumina crashed on Leatherdale Road in Anderson County. The Lumina was traveling in excess of

---

[5] I accept this stipulation notwithstanding the finding of the circuit judge that Mayfield was an unauthorized, non-permissive user. Perhaps this finding by the circuit court is a scrivener's error. The majority takes no issue with the circuit court's finding in this regard, and neither will I.

twice the posted speed limit at the time of the crash. As a result of the crash, one passenger died, and the other three passengers (including Mayfield and Walls) were seriously injured. Mayfield pled guilty to reckless homicide.

Walls's liability policy with Nationwide contained the following:

> B. This coverage does not apply, with regard to any amounts above the minimum limits required by the South Carolina Financial Responsibility Law as of the date of the loss, to:
>
> . . . .
>
> > 6. Bodily injury or property damage caused by:
> >
> > > a) you;
> > >
> > > b) a relative; or
> > >
> > > c) anyone else while operating your auto;
> > >
> > > > (1) while committing a felony; or
> > > >
> > > > (2) while fleeing a law enforcement officer.

Relying on the validity of this provision, Nationwide tendered $50,000, the statutory minimum required by section 38-77-140 of the South Carolina Code (2015). Walls, however, demanded the policy limits. In an effort to resolve the coverage dispute, Nationwide filed the underlying declaratory judgment action. There is no dispute as to the material facts. This case does not concern a motor vehicle accident involving general negligence or gross negligence principles. Mayfield intentionally fled from law enforcement. As the majority notes, "the circuit court found that Mayfield was committing a felony and fleeing from the police at the time of the accident."[6]

---

[6] Failure to stop for blue light—fleeing a law enforcement officer— is a felony in South Carolina when it results in great bodily injury or death. *See* S.C. Code Ann. § 56-5-750(C) (2018).

## II.

I begin with the unassailable premise that South Carolina has long recognized that "[r]easonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted." *Pa. Nat'l Mut. Cas. Ins. Co. v. Parker*, 282 S.C. 546, 551, 320 S.E.2d 458, 461 (Ct. App. 1984). In this case, the court of appeals correctly followed the policy decision of our legislature in allowing contracted-for exclusions to reduce coverage for "fleeing a law enforcement officer"—conduct our legislature has deemed a crime. *See* S.C. Code Ann. § 56-5-750. Even our decision in *Williams v. GEICO*, which the majority claims compels the result today, acknowledged the "general rule [that] insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 598, 762 S.E.2d 705, 712 (2014).

An exclusion for criminal conduct does not preclude a claim in its entirety. The public policy, as determined by our legislature, seeks to provide a measure of protection to injured parties. More precisely, section 38-77-140(A) mandates that an automobile insurance policy issued in South Carolina must "contain[] a provision insuring the persons defined as insured against loss from [] liability" in specified minimum amounts. The reduction from excess coverage to a compulsory minimum is often referred to as a step-down. Here, the relevant subsection is section 38-77-140(A)(2) that provides for "[$50,000 in the event] of bodily injury to two or more persons in any one accident." Section 38-77-140 concludes with the following: "Nothing in this article prevents an insurer from issuing, selling, or delivering a policy providing liability coverage in excess of these requirements." S.C. Code Ann. § 38-77-140(B). In addition, "[w]ith respect to a policy which grants [] excess or additional coverage, the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is *required* by this article." S.C. Code Ann. § 56-9-20(5)(d) (2018) (emphasis added). Walls and Nationwide contracted for liability coverage in excess of the compulsory minimum, and the policy included the "committing a felony" and "fleeing a law enforcement officer" provisions.

Did the South Carolina Legislature intend to render the "committing a felony" and "fleeing a law enforcement officer" provisions void pursuant to section 38-77-142? I am convinced our legislature intended no such thing.

In relevant part, section 38-77-142 provides:

(A) No policy or contract of bodily injury or property damage liability insurance covering liability arising from the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of the vehicle or may be issued or delivered by an insurer licensed in this State upon a motor vehicle that is principally garaged, *docked*, or used in this State unless the policy contains a provision insuring the named insured and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured against liability for death or injury sustained or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of the vehicle by the named insured or by any such person. Each policy or contract of liability insurance, or endorsement to the policy or contract, insuring private passenger automobiles principally garaged, *docked*, or used in this State, that has as the named insured an individual or husband and wife who are residents of the same household and that includes, with respect to any liability insurance provided by the policy, contract, or endorsement for use of a nonowner automobile a provision requiring permission or consent of the owner of the automobile for the insurance to apply.

(B) No policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle may be issued or delivered in this State to the owner of a vehicle or may be issued or delivered by an insurer licensed in this State upon a motor vehicle principally garaged or used in this State without an endorsement or provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured, against liability for death or injury sustained, or loss or damage incurred within the coverage of the

policy or contract as a result of negligence in the operation or use of the motor vehicle by the named insured or by any other person. . . .

(C) Any endorsement, provision, or rider attached to or included in any policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section is void.

(Emphasis added).

Notice the two references in subsection 38-77-142(A) to vehicles that are "docked" in South Carolina. The South Carolina General Assembly patterned this omnibus statute after a corresponding Virginia statute. *See* Va. Code Ann. § 38.2-2204(A) (2020). While South Carolina's statute applies to motor vehicles only, the Virginia statute applies to vehicles *and* watercraft "garaged, docked, or used in" Virginia. The inadvertent inclusion of the word "docked" in the South Carolina omnibus statute makes it abundantly clear that our legislature adopted the Virginia statute.

No decision examining the Virginia law has interpreted the statute so as to prohibit an illegal acts exclusion, as the majority here does today. In fact, I cannot find a single case in any jurisdiction that supports today's decision. Neither the majority nor Petitioner Walls has cited a single reported decision that purports to buttress today's result—that is, except for *Williams v. GEICO*, this Court's most recent foray into judicially legislating public policy as it relates to insurance law in South Carolina.

And so we come to this Court's 2014 decision in *Williams v. GEICO*. Petitioner Walls and the majority rely exclusively on *Williams* to strike down not only the "committing a felony" and "fleeing a law enforcement officer" exclusions in this policy, but *all* so-called step-downs that reduce liability coverage to the statutory minimum when an insured engages in criminal conduct that is clearly addressed in the policy. I dissented in *Williams*. I did not, however, disagree with the Court's policy-making rationale. I dissented because I believed the legislature, not this Court, establishes policy. I did not believe section 38-77-142 mandated the Court's policy decision. I believed (and still believe) the key language in section 38-77-142(C)—any provision that purports "to limit or reduce the coverage afforded by the provisions *required* by this section is void"—addresses the mandatory requirement of minimum coverage. (Emphasis added.) I note the title to section 38-77-142 includes the phrase "required provisions." Beyond the required mandatory coverage, when addressing voluntary coverages and policy provisions, I

would not void policy provisions based on a misguided and myopic view of section 38-77-142.

Yet, if a *Williams* situation were presented to this Court again, I would be inclined to follow the *Williams* decision because, despite being given the chance to do so, the legislature has not overruled that decision. However, the issue before us today does not remotely resemble the issue in *Williams*. In *Williams*, husband and wife insureds were killed in an accident when their vehicle was struck by a train. The GEICO policy provided an exclusion (beyond the statutory minimum) for liability coverage when there is "bodily injury to any insured or any relative of an insured residing in his household." Thus, the Court was presented with a family step-down provision that reduced liability coverage when a family member of the at-fault insured was the claimant.

The *Williams* Court reviewed the Motor Vehicle Financial Responsibility Act and noted that the purpose of the Act "is to give greater protection to those injured through the *negligent* operation of automobiles." *Williams*, 409 S.C. at 599, 762 S.E.2d at 712 (emphasis added). While the majority in *Williams* acknowledged "a wide divergence of authority in this area," it gave controlling weight to cases from jurisdictions that disfavored family step-down provisions, most notably the Commonwealth of Kentucky. *Id.* at 604–07, 762 S.E.2d at 715–16 (discussing in detail *Lewis ex rel. Lewis v. West American Insurance Co.*, 927 S.W.2d 829, 833 (Ky. 1996), in which the Supreme Court of Kentucky found, "To uphold the family exclusion would result in perpetuating socially destructive inequities.").

It appears family step-down provisions were designed to address the possibility of collusion among family members. It further appears that the concern with family collusion was often more theoretical than real, and some courts, as in *Lewis*, struck down the perceived anachronistic family step-down provision on policy grounds. The husband and wife insureds in *Williams* were both killed in the accident—to be sure, no collusion existed and thus the purported rationale for the family step-down did not exist. The *Williams* majority agreed with the public policy reasoning of *Lewis* and observed that "it would indeed be an unusual public policy that would condone denying coverage to a child where he or she is catastrophically injured while being driven by a parent to school, but would allow recovery where the parent injures a stranger while on the way to work." *Id.* at 607, 762 S.E.2d at 716.

However, the Court in *Williams* did not stop with merely declaring its preferred policy. That policy preference had to be tied to the South Carolina Legislature. The answer, of course, was found in a forced construction of section 38-77-142. *Williams* concluded that the family step-down provision was in contravention of

section 38-77-142 and "to allow an insurer to determine the extent to which an injured party can recover within the insured's policy coverage based solely on a familial relationship is arbitrary, capricious and injurious to the public good." *Id.* at 607, 762 S.E.2d at 717.

From either a public policy or statutory construction perspective, the policy exclusions here for "committing a felony" and "fleeing a law enforcement officer" bear not the slightest resemblance to the family step-down provision in *Williams*. The suggestion that *Williams* controls the decision here is specious. The focus in *Williams* was on the purpose of the law—to protect those injured by the *negligent* operation of automobiles. In this regard, section 38-77-142 tracks the stated purpose of the Motor Vehicle Financial Responsibility Act by providing in subsection (A) that mandatory coverage is to provide coverage for "liability for death or injury sustained or loss or damage incurred within the coverage of the policy or contract *as a result of negligence in the operation or use of the vehicle by the named insured or by any such person*." (Emphasis added). Subsection (B) of section 38-77-142 contains a similar reference to "negligence in the operation" of the vehicle. Here, we are confronted not with negligence but the intentional criminal act of an insured fleeing from law enforcement. Next, *Williams* dealt with *who* was covered. The point in *Williams* was that one insured could not be singled out for disfavored treatment as compared to another insured. Here, the focus is instead on the conduct of the insured in causing the injury; there are not different levels of coverage for injured parties—all are treated the same.

I am confident Nationwide's specific criminal conduct policy exclusions are completely consistent with section 38-77-142, but the majority rules otherwise. In so ruling, the Court is legislating. Make no mistake about it. The Court not only interprets section 38-77-142 to its own liking, the Court majority nullifies the many statutory provisions that allow parties freedom to contract for additional coverage and additional provisions, including section 38-77-140(B) and section 56-9-20(5)(d). Attributing the result today to the South Carolina General Assembly under the guise of statutory interpretation is judicial sleight of hand.

Finally, I address the suggestion that the decision today is in line with the public policy of South Carolina. I reiterate that where the legislature has spoken, the legislature establishes public policy. This Court may intervene and overrule a public policy determination of the legislature only when that policy contravenes the South Carolina Constitution or United States Constitution. As noted, with respect to automobile insurance policies, every other jurisdiction in the United States that follows a similar statutory scheme permits criminal conduct exclusions

that reduce liability coverage to the statutory minimum where the injury is caused by an insured.  I believe the universal acceptance of the validity of such exclusions (or step-down provisions) reflects the public policy.  *See* 8A *Couch on Insurance* § 121:94 & n.3 (3d ed. Dec. 2020 Update) (collecting cases standing for the proposition that "[a]n exclusion in an automobile policy as to loss while the automobile used is engaged in unlawful flight from the police is not against public policy").  Justifications for such exclusions are obvious and common sense.  The "committing a felony" and "fleeing a law enforcement officer" exclusions address conduct that significantly increases the insured risk, and an insured can easily avoid the application of the exclusions by obeying the law.  *See, e.g.*, David J. Marchitelli, Annotation, *Automobile Liability Insurance Policy Exclusion as Applied to Loss or Injury Resulting from Insured's Flight from Police*, 41 A.L.R.6th § 527 (2009) ("Efforts to exclude coverage for such behavior are often bolstered by judicial and legislative policies against allowing individuals to insure themselves against the consequences of their own intentional misconduct.").[7]  The "committing a felony" and "fleeing a law enforcement officer" exclusions manifestly support public policy.  To borrow from *Williams*, the "committing a felony" and "fleeing a law enforcement officer" exclusions in the Nationwide and Walls policy are in no manner "arbitrary, capricious [or] injurious to the public good."  *See Williams*, 409 S.C. at 607, 762 S.E.2d at 717.

I dissent.

**JAMES, J., concurs.**

---

[7] I fully understand that most every motor vehicle accident is the result of a criminal violation, such as speeding, running a red light, and the list could go on.  In the insurance context, those claims are treated as negligence, and properly so.  It would be wholly improper for a sneaky insurance company to exclude criminal acts generally, thereby reducing coverage to the mandatory minimum in virtually every case.  The policy exclusion for criminal conduct must be precise and transcend the realm of negligence, as the Nationwide and Walls policy here does.  Nationwide and Walls excluded liability coverage for "committing a felony" (an understood term of art) and "fleeing a law enforcement officer" (intentional criminal conduct proscribed by a specific statute).